## United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Manuel Barbosa | CASE NO. | 10-B-28657 |
|---|---|---|---|
| DATE | May 6, 2011 | ADVERSARY NO. | 10-A-1794 |
| CASE TITLE | Michael R. Blair and Joan Blair, Debtors<br><br>Jacob Van Vels and Marian Van Vels, Plaintiffs<br>v.<br><br>Michael R. Blair and Joan Blair, Defendants. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, the Defendants' Motion to Dismiss is GRANTED. Plaintiffs shall be granted until May 31, 2011, to file an amended complaint, and the Defendants shall be granted until June 15, 2011, to file an answer or other responsive pleading to any such amended complaint.

■[ For further details see text below.]

### Memorandum Opinion

### I. Factual and Procedural Background

The Plaintiffs entered into a contract with Mr. Blair on May 12, 2009, to build kitchen and bath cabinets and other furnishings for their home.[1] The initial contract price was for $22,850, of which $11,425 was paid up-front. Mr. Blair purchased materials and began construction and installation of the furnishings. However, Mr. Blair changed some of the designs from what was originally agreed upon and made several other mistakes. Most notably, the Plaintiffs allege that Mr. Blair made regular doors for the cabinets rather than the "double

---

[1] As discussed below, because this matter is before the Court on a motion to dismiss, the Court accepts as true all of the factual allegations contained in the adversary complaint. See, e.g., Erikson v. Pardus, 551 U.S. 89, 93-94 (2007); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

drawer false front" style that they had agreed upon. In late July, apparently after the Van Vels pointed out the changes or mistakes, Mr. Blair requested an additional $2,000 to be added to the contract price and asked the Plaintiffs to sign an amended contract. The Plaintiffs, who are 81 and 84 years old, allege that Mr. Blair tried to trick or force them into signing the new contract by advising them that it included no changes and by refusing to let their daughter attend the meeting. However, it seems that the Plaintiffs never signed the new contract and never paid the additional $2,000. Instead, when the Plaintiffs pointed out the changes in the contract, Mr. Blair walked out and never completed the project. The Plaintiffs allege that when Mr. Blair left the meeting he promised to deliver the remaining purchased but unused wood, but that he never did so and never returned any of the Plaintiffs' $11,425 deposit. The Plaintiffs estimate that Mr. Blair only completed about 15% of the cabinets provided for under the contract. The Plaintiffs sued Mr. Blair in the 58th District Court in Hudsonville, MI, and obtained a default judgment in the amount of $11,425.00 on December 1, 2009.

Mr. Blair filed a joint petition with his wife for protection under Chapter 7 of the Bankruptcy Code with this Court on June 28, 2010. The Plaintiffs filed this adversary case with this Court on September 13, 2010, seeking to find the state court judgment non-dischargeable. The Defendants filed a motion to dismiss the adversary complaint on December 7, 2010, for lack of subject-matter jurisdiction, improper venue and failure to state a claim.

## II.    Discussion

### A. Lack of Subject-Matter Jurisdiction and Improper Venue (Rule 12(b)(1), (3))

The Defendants first argue that the complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) or (b)(3) for lack of subject-matter jurisdiction or improper venue. "It is the responsibility of a court to make an independent evaluation of whether subject matter jurisdiction exists in every case." Foster v. Hill, 497 F.3d 695, 696-97 (7th Cir. 2007). However, it is not entirely clear from the motion whether the Defendants are arguing that the Court in fact does not have jurisdiction to hear the complaint, or if they are simply arguing that the complaint should be dismissed because the Plaintiffs failed to properly *allege* a basis for jurisdiction.

The Court has no doubt from the complaint that, as a substantive matter, this Court does have jurisdiction to hear the matter. 28 U.S.C. §1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois provides for the automatic referral of "all cases under Title 11 U.S.C. and any and all proceedings arising under Title 11 U.S.C. or arising in or related to any case under Title 11 U.S.C." to the bankruptcy judges of the Northern District of Illinois, pursuant to 28 U.S.C. §157(a). The Plaintiffs stated in their request for relief in the complaint that they "request that Defendant not be discharged from his debt to the Plaintiffs of $11,647.00 as awarded by the [58th District Court in Hudsonville, MI]." (Compl. 3, ECF No. 1). In the Plaintiffs' cover sheet to the complaint filed with the Clerk, they described the cause of action as "11 U.S.C. Section 523(a)(2)" and selected the box "Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud" as the "Nature of Suit." (Adversary Proceeding Cover Sheet, ECF No. 2). Furthermore, in the complaint itself the Plaintiffs alleged that "Defendant has **defrauded** Plaintiffs." (Compl. 3, ¶19, ECF No. 1). Pleadings need not

specify legal theories, Boyer v. Belavilas, 474 F.3d 375, 378 (7th Cir. 2007), but it is clear that the Plaintiffs are asserting a claim of action under 11 U.S.C. §523(a)(2), which makes debts obtained by "false pretenses, a false representation, or actual fraud" non-dischargeable in bankruptcy. Such a claim of action is created by the Bankruptcy Code and therefore "arises under title 11." It is also designated a "core proceeding" under 28 U.S.C. §157(b)(2)(I) as a "determination[] as to the dischargeability of particular debts."[2]

Similarly, there is no doubt that venue with this Court was proper. Under 28 U.S.C. § 1409(a), a proceeding related to a bankruptcy case may be brought in the same venue as the bankruptcy case. The Debtors' bankruptcy case was filed with this Court and the adversary relates to the bankruptcy case, since the Debtors are the defendants in the adversary and it seeks to find a prepetition debt owed by them nondischargable. Even if this Court were an improper venue for the related *bankruptcy case*, a proposition which the Debtors have not suggested or supported, the Debtors themselves voluntarily chose to file their bankruptcy case in this district, and would therefore be judicially estopped from arguing that it was improper. Unlike subject-matter jurisdiction, the right to object to venue may be waived.

However, the Defendants are correct that the complaint fails to expressly allege grounds for jurisdiction. Under Fed. R. Civ. P. 8(a)(1), incorporated by Fed. R. Bankr. P. 7008, a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support."[3] Additionally, Fed. R. Bankr. P. 7008(a) states that a complaint "shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge." However, the Supreme Court has also held that a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007) (internal citations and quotation marks omitted). While *pro se* litigants are "entitled to have [their] filings construed more liberally than papers which are drafted by attorneys ... this does not change the substantive law governing rights of the parties, merely the court's expectations concerning a *pro se* litigant's ability to comply with the court's procedural requirements." Barker v. Educ. Credit Mgm't Corp., 2008 WL 754095 (S.D. Ill. Mar. 18, 2008) (citing Kincaid v. Vail, 969 F.2d 594 (7th Cir. 1992)).

---

[2] The Defendants may be arguing that this Court does not have jurisdiction to determine the underlying debt, which would be a state law claim under either contract or fraud. However, it is clear from the complaint that the Plaintiffs are seeking no such determination, since they allege that they have already obtained a judgment against the Defendants in state court. Additionally, there is little doubt that this Court would have jurisdiction to hear the state law claims. The state law nature of a cause of action can be relevant to a motion to abstain under 28 U.S.C. §1334(c) where there is a parallel action pending in state court, but does not mean that the bankruptcy court does not have *jurisdiction*. A matter is "related to" a bankruptcy, and the bankruptcy court therefore has jurisdiction, "when the dispute affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors." In re FedPak Sys. Inc., 80 F.3d 207, (7th Cir. 1996); see also In re Conseco, Inc., 330 B.R. 673, 681 (Bankr. N.D. Ill. 2005) ("Related jurisdiction is 'primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtors and others but that section 1334(b) allows to be forced into bankruptcy so that all claims by and against the debtor can be determined in the same forum.'") (quoting Zerand–Bernal Group, Inc. v. Cox, 23 F.3d 159, 161 (7th Cir.1994)). The underlying fraud or contract claim, as a claim against the Debtors, would affect the Plaintiffs' proportional share of any allocation of property among creditors, and therefore is "related to" the bankruptcy case. See also 1 Ginsberg & Martin on Bankruptcy, ¶ 1.03[A][3][c][iii][dd], 1-38 (4th ed. Rev. 2011) ("In the situation where the debtor is a defendant rather than a plaintiff in an action under non-bankruptcy law, the fact that the defendant has become a debtor in a bankruptcy case should be sufficient to make the matter a core proceeding.").

[3] The Rule does not require that a complaint allege a source of venue.

Because the Plaintiffs are *pro se*, it is unlikely that the Court would dismiss the complaint solely on the grounds that they failed to include a jurisdictional statement, where it is otherwise clear from context the source from which jurisdiction arises. See, e.g., Caldwell v. Miller, 790 F.2d 589, 595 (7th Cir. 1986) (noting more lenient standard for *pro se* plaintiffs, and stating that it "is also well settled that Fed. R. Civ. P. 8(a)(1) does not require a plaintiff to set forth the statutory basis for the district court's subject-matter jurisdiction in order for the court to assume jurisdiction, so long as he alleges facts sufficient to bring the case within the court's jurisdiction."); Loss v. Blankenship, 673 F.2d 942, 950 (7th Cir. 1982) ("Imperfections in pleading style will not divest a federal court of jurisdiction where the complaint as a whole reveals a proper basis for jurisdiction."); Lakin v. Skaletsky, No. 08-C-842, 2008 WL 4662846 (N.D. Ill. Oct. 15, 2008) ("For *pro se* plaintiffs, the court should not dismiss for failure to properly plead subject-matter jurisdiction if the existence of jurisdiction can be gleaned from the rest of the complaint.") (citing Rohler v. TRW, Inc., 576 F.2d 1260, 1264 (7th Cir.1978)). However, because as noted below the Court is already dismissing the complaint with leave to file an amended complaint for failure to meet the heightened pleading standards of Rule 9(b), the Court notes that any such amended complaint should contain a short jurisdictional statement consistent with Rule 8(a)(1). See, e.g., McCready v. eBay, Inc., 453 F.3d 882, 891 (7th Cir. 2006) (noting that where "jurisdiction is not properly alleged, typically we would allow a plaintiff to amend his complaint to cure the deficiency or to supplement his brief to provide clarification"). Given the Court's discussion in the preceding paragraph, it should not be difficult to include a simple statement that the Court has jurisdiction to decide the matter of dischargeability under 28 U.S.C. §1334(b), and that it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## B. Failure to State a Claim (Rule 12(b)(6))
### 1. Pleading Standard (Rules 8 and 9)

The Defendants next argue that the Plaintiffs have failed to state a claim with sufficient detail, and that the complaint should therefore be dismissed under Fed. R. Civ. P. 12(b)(6) (as made applicable under Fed. R. Bankr. P. 7012). Rule 12(b)(6) tests the sufficiency of the complaint, rather than the merits of the case. Dixon v. Am. Cmty. Bank & Trust (In re Gluth Bros. Constr., Inc.), 424 B.R. 379, 389 (Bankr. N.D. Ill. 2009) (citing Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990)). Under Rule 12(b)(6), a court must "assume that the factual allegations made in the complaint (unless fantastic, or contradicted in the complaint itself or in documents attached to it) are true." Atkins v. City of Chicago, 631 F.3d 823, 831-32 (7th Cir. Jan. 25, 2011). The standard for pleading is set forth in Fed. R. Civ. P. 8 and 9 (as made applicable under Fed. R. Bankr. P. 7008 and 7009).

Under Rule 8(a)(2), a pleading for a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The "Rule reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. 2009) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)). The focus of the Rule is to "give the defendant fair notice of what ... the claim is and the grounds upon which it rests." Brooks, 578 F.3d at 581 (citing Erickson v. Pardus, 551 U.S. 89, 93 (2007)). While this does not require "detailed factual allegations," a "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Instead, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Under

this standard, the "plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010). In determining whether events "could" have happened, "the complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as 'preponderance of the evidence' connote." Atkins, 631 F.3d at 832. The well-pleaded facts cannot be "merely consistent with a defendant's liability," but must demonstrate a plausible "entitlement to relief." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556-57).

Where fraud is alleged, a more rigorous pleading standard comes into play. Dixon v. Am. Comm. Bank & Trust (In re Gluth Bros. Const., Inc.), 424 B.R. 379, 389 (Bankr.N.D.Ill. 2009). In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Id. (quoting Fed. R. Civ. P. 9(b)). The circumstances of fraud or mistake include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Windy City Metal Fabricators & Supply, Inc. V. CIT Techn. Fin. Servs., Inc., 536 F.3d 663, 668 (7th Cir. 2008) (citing Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1078 (7th Cir. 1997)); see also DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990) (describing Rule 9(b) particularity as "the who, what, when, where, and how: the first paragraph of any newspaper story").

2. **Elements of a Section 523(a)(2) Claim**

Under 11 U.S.C. §727, subject to certain conditions to be fulfilled by the debtor, a bankruptcy court ordinarily will discharge a debtor's debts, releasing the debtor from liability for those debts. Follett Higher Educ. Grp., Inc. v. Berman (In re Berman), 629 F.3d 761,765 (7th Cir. Jan. 21, 2011). However, Section 523(a) of the Code contains specific exclusions for certain categories of debts from discharge, often, but not always, where the debt results from some sort of intentional wrongdoing by the debtor. Id. Courts construe these exceptions narrowly in favor of the debtor, bearing in mind the goal of bankruptcy law to give the debtor a fresh start. Id.

Section 523(a)(2)(A) provides a limited exception to the dischargeability for individual debtors for any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
> (A)   false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

11 U.S.C.A. § 523(a)(2) (West 2011). In order for the creditor to receive an exception from discharge based on false representation, "a creditor must show that (1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." Ojeda v. Goldberg, 599 F.3d 712, 716-17 (7th Cir. 2010). In order to receive an exception from discharge under 11 U.S.C. § 523(a)(2)(A) based on actual fraud, "the creditor must establish the following: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute." In re Cooper, 2011 WL 722537 (Bankr. N.D. Ill. Feb. 23, 2011) (Squires, J.) (citing McClellan v. Cantrell, 217 F.3d 890, 893 (7th Cir. 2000)).

Fraud "may be inferred if the totality of the circumstances presents a picture of deceptive conduct by the debtor that indicates he intended to deceive or cheat the creditor." Id. It may encompass "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." Id. (citing McClellan, 217 F.3d at 893).

### 3. Application

Here, in the Plaintiffs' complaint they have identified no misrepresentation made by the Defendants that induced them to enter into the contract with Mr. Blair or make payments to him. The Plaintiffs allege in their response to the motion to dismiss that Mr. Blair "bragged numerous times ... about his skill at making cabinets" and generally "overstat[ed] his qualifications." (Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss, 3, ECF No. 31). However, first, these allegations must appear in the complaint itself in order to give the Defendants an opportunity to admit them or deny them or to assert affirmative defenses. Second, the allegations must contain more detail to meet the Rule 9(b) standard. Unlike the failure to state a basis for jurisdiction, this is more than a mere technical deficiency. Without more detail, the Defendants are unable to assess the basis of the Plaintiffs' complaint or raise defenses, and the Court is unable to determine whether the purported misrepresentation plausibly supports the claim. For example, if a statement was made after the Plaintiffs made payment, then the money could not have been "obtained by" the misrepresentation. Additionally, there is not enough detail about the alleged statements to determine whether they constituted misrepresentations of fact upon which the Plaintiffs could have justifiably relied or were mere statements of opinion or puffing. Compare In re Barr, 194 B.R. 1009, 1018 (Bankr N.D. Ill. 1996) (debtor's claim to be a "custom home builder" even though he "proved to be a poor and even careless builder" was mere "marketing hyperbole" or "mere puffing" rather than actionable misrepresentation) with In re Ferguson, 222 B.R. 576 (Bankr. N.D. Ill. 1998) (debtor's false representation that an architect had reviewed the building plans and representation that home would be built to "Code Plus" quality were "more than just puffing, because he held himself out as providing a special quality as a builder").

The Plaintiffs also give no detail as to what actions by the Defendants they believe were fraudulent. Again, the only actions they allege appear to have occurred *after* they paid Mr. Blair the $11,425.00 for which debt they seek to find non-dischargeable. They allege that after receiving the money, Mr. Blair changed the plans, did a poor job, and ultimately abandoned the job. Such actions may have constituted a breach of contract, but not fraud, and in any event the money was not obtained through those acts. See, e.g., Reeves v. Davis (In re Davis), No 10-2757, 2011 WL 855837 (7th Cir. Mar. 14, 2011) ("The fact that the porch was part of the contract and that Davis did not build it establishes only breach of contract, not fraud.").[4] The Plaintiffs allege that Mr. Blair later requested an additional $2,000, but do not allege that they actually paid any additional amount. Instead, they seek only damages for the original $11,425.00 that they allege they paid plus interest, costs and fees. While it is true that "making a promise that one *intends* not to keep" can constitute fraud, Id. (citing United States ex rel. Main v. Oakland City University, 426 F.3d 914, 917 (7th Cir. 2005), that is not what the Plaintiffs allege. The Plaintiffs do not allege that at the time Mr. Blair entered into the contract and accepted the initial payment he intended not to perform. Nor is such an allegation consistent with or supported by the facts they do allege. Rather than simply 'taking the money and running,' the Plaintiffs admit that Mr. Blair

---

[4] To the extent that the Plaintiffs intended to bring a claim under Section 523(a)(6) for "willful and malicious injury by the debtor to another entity or to the property of another entity," the Seventh Circuit Court of Appeals has stated that such "provision is intended to prevent the discharge of debts incurred as a result of intentional torts" not simple "breach of contract." Radivojevic v. Pickens (In re Pickens), No. 98-1985, 234 F.3d 1273 (7th Cir. Aug. 1, 2000); see also Wish Acquisition, LLC v. Salvino, No. 07-C-4756, 2008 WL 182241 (N.D. Ill. Jan. 18, 2008) (finding that "a debt arising from an intentional breach of contract standing alone is insufficient to except a debt from discharge for willful and malicious injury").

"purchased enough oak to complete the entire job as well as other materials and began work" and "partially completed construction on cabinets for the master bath and installed them." (Compl. 1-2, ¶3, 7, ECF No. 1).

Therefore, the Plaintiffs have failed to state a claim under Section 523(a)(2), and the complaint will be dismissed with leave to file an amended complaint. Additionally, as the Defendants note in their Motion to Dismiss, the Plaintiffs have alleged no actions taken by Mr. Blair's wife, co-Debtor Joan Blair, whatsoever or alleged that she was in any way connected with the transaction and contract between her husband and the Plaintiffs. Therefore, even if the complaint were sufficient to state a claim against her husband, the motion to dismiss as against Mrs. Blair would be granted.

### III.    Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss is granted, and the Adversary Complaint shall be dismissed. However, the Plaintiffs shall be granted until May 31, 2011, to file an amended complaint, and the Defendants shall be granted until June 15, 2011, to file an answer or other responsive pleading to any such amended complaint. The status hearing set for June 16, 2011 at 10:30 a.m. shall remain.

A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

May 6, 2011

Judge Manuel Barbosa

# CERTIFICATE OF MAILING

The undersigned hereby certifies that the attached Memorandum Opinion has been served via First Class Mail on May 6, 2011.

**Jacob and Marian Van Vels**
969 Chippewa St.
Jenison, MI 49428

**Metrou & Associates, P.C.**
**Peter N Metrou**
123 W. Washington Street
Suite 216
Oswego, IL 60543

*Kimberly Conrad*
Kimberly Conrad, Judicial Assistant